FILED
SUPERIOR COURT
OF GUAM

2025 JAN -6 AM 9: 41

CLERK OF COURT
BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **THOMAS J. FISHER,** *in his Personal and Official Capacity as a Senator of the 37th Guam Legislature,*<br><br>**Petitioner,**<br>**vs.**<br><br>**TELO TAITAGUE,** *in her Official Capacity as a Senator of the 37th Guam Legislature,*<br><br>**Respondent.** | **SPECIAL PROCEEDING NO. SP0097-24**<br><br><br>**DECISION AND ORDER RE ALTERNATIVE WRIT OF MANDATE** |

This matter came before the Honorable Dana A. Gutierrez on September 27, 2024, for a hearing regarding an Alternative Writ of Mandate[1] issued against Senator Telo Taitague. At the hearing, Attorney Rachel Taimanao-Ayuyu appeared on behalf of the Petitioner, Senator Thomas J. Fisher, and Attorney Braddock J. Huesman appeared on behalf of the Respondent, Senator Taitague. Upon review of the written briefings, oral arguments, and applicable Guam law, the Court issues the following Decision and Order.

## BACKGROUND

The parties are senators in the 37th Guam Legislature. On June 28, 2024, the Legislature debated possible amendments to Bill 175-37 (COR). During the debate, Senator Taitague read

---

[1] An Alternative Writ of Mandate "command[s] the party to whom it is directed, immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed or to show cause before the court at a specified time and place why he has not done so." 7 GCA § 31204 (emphasis added). Likewise, under the Sunshine Act, "[w]henever it is made to appear by verified petition to the Superior Court of Guam that certain public records are being improperly withheld from a member of the public, the Court shall order the officer or person charged with withholding the records to promptly disclose the public record or show cause why the person should not do so." 5 GCA § 10111(c) (emphasis added).

certain text messages into the legislative record. These text messages included direct correspondence between Senator Taitague and Attorney General Douglas Moylan, as well as correspondence between Attorney General Moylan and other senators. *See* Sen. Taitague Response, Ex. C (July 24, 2024). Shortly thereafter, Senator Fisher wrote a request "pursuant to the Sunshine Act of Guam" for Senator Taitague to produce a copy of these text messages and placed the request on Senator Taitague's desk. *See id.* Ex. A.

Senator Taitague did not respond directly to Senator Fisher; she instead provided a copy of the request to Joseph A. San Agustin, the Executive Director of the 37th Guam Legislature (the "Executive Director"). *Id.* at 1. On July 5, 2024, the Executive Director sent Senator Fisher an email containing a document "responsive to [Senator Fisher's] request." Decl. Thomas J. Fisher, Ex. C (July 9, 2024). The response was a letter drafted by Attorney General Moylan on July 1, 2024. The letter outlined the Attorney General's position on the proposed amendments to Bill 175-37 (COR) and included a written transcription of the text messages. *See id.*

On July 9, 2024, Senator Fisher filed an *Ex Parte* Petition for an Order to Show Cause or Alternative Writ of Mandate ("Petition"). In his Petition, Senator Fisher alleged that he had made a Sunshine Act request for Senator Taitague to produce public documents, and that Senator Taitague failed to comply. *See generally* Petition (July 9, 2024). Senator Fisher thus sought (1) an Alternative Writ of Mandate; (2) the assessment of a $1,000.00 fine to Senator Taitague; (3) that Senator Taitague "be declared a misdemeanant and punished in accordance with the laws of Guam;" (4) costs and attorney's fees; and (5) other relief the Court deems necessary. *Id.* at 3-4. On July 11, 2024, the Court issued the writ and set a hearing for July 30, 2024. *See* Alternative Writ of Mandate (July 11, 2024).

Separately on July 11, 2024, the Executive Director sent Senator Fisher another email, this one containing "supplemental files" responsive to Senator Fisher's Sunshine Act request. *See* Sen. Taitague Response, Ex. C (July 24, 2024). These files appear to be images of the text messages in question, copied from Senator Taitague's cell phone and/or WhatsApp account. *See id.*

On July 24, 2024, Senator Taitague filed a Response to the Alternative Writ of Mandate. Senator Taitague argued that the Court should deny the writ for two reasons: first, because it is moot since Senator Fisher had now received copies of the text messages from the Executive Director; and second, because Senator Fisher had failed to join the Legislature as an "indispensable party" to this proceeding. *See generally* Sen. Taitague Response (July 24, 2024). On July 26, 2024, Senator Fisher filed Reply to Respondent's Response ("Senator Fisher Reply"), arguing the case is not moot because Senator Taitague herself still has not disclosed the text messages, and that the Legislature is not an "indispensable party" to this proceeding under Guam Rules of Civil Procedure ("GRCP") Rule 19(a). *See generally* Reply (July 26, 2024).

On July 30, 2024, the parties appeared for a hearing, but Senator Taitague requested additional time to retain counsel. Min. Entry at 1:38:30 P.M. (July 30, 2024). Senator Fisher did not object, so the Court granted Senator Taitague's request and continued the hearing to August 14, 2024. *Id.* at 1:43:15 PM. At the continued hearing, the Court sought further briefing on whether Senator Taitague's office is an "agency" for purposes of the Sunshine Act. *See* Order After Hearing (Aug. 14, 2024). Senator Taitague filed her Further Briefing Re Court Order ("Sen. Taitague's Further Briefing") on August 23, 2024, Senator Fisher filed Response to Court Order for Further Briefing ("Sen. Fisher's Further Briefing") on August 30, 2024, and Senator Taitague filed Reply to Petitioner's Response Re Court Order on September 6, 2024.

3

**DECISION AND ORDER RE ALTERNATIVE WRIT OF MANDATE**
SP0097-24; *Thomas J. Fisher, in his Personal and Official Capacity as a Senator of the 37th Guam Legislature, v.*
*Telo Taitague, in her Official Capacity as a Senator of the 37th Guam Legislature*

On September 27, 2024, the Court heard arguments from the parties and also received testimony from Senator Fisher about the organizational structure of the Legislature. After the hearing, the Court took the matter under advisement.

## DISCUSSION

### 1. Whether The Sunshine Act Applies to Senatorial Offices

The Sunshine Act "authorize[s] public access to certain government agency records and information." *Macris v. Guam Mem'l Hosp. Auth.*, 2008 Guam 6 ¶ 25 n.4. Senator Fisher asserts, and Senator Taitague appears to agree, that Senator Fisher has the right to seek copies of the text messages in question. However, Senator Taitague argues that it is the Legislature—not Senator Taitague individually, or her senatorial office—who held the duty to respond to Senator Fisher. *See generally* Sen. Taitague Further Briefing (Aug. 23, 2024). Senator Taitague argues that the Sunshine Act applies only to "agencies," and that only the Legislature—not she or her office—is an "agency" under the Act. *See id.* In response, Senator Fisher asserts that a senator, and/or her senatorial office,[2] is an "agency" for purposes of the Sunshine Act whenever the senator and/or her office is in possession of disclosable "public records." Sen. Fisher Further Briefing at 4-5 (Aug. 30, 2024).

To determine whether any of the above entities are "agencies" under the Sunshine Act, the Court must interpret the relevant statute. "It is a cardinal rule of statutory construction that courts must look first to the language of the statute itself. Absent clear legislative intent to the contrary,

---

[2] In his written briefing, Senator Fisher has consistently taken the position that a senator him-or-herself is an "agency." *See, e.g.,* Reply at 4 ("[Senator Taitague] and her office is an agency;" Sen. Fisher Further Briefing at 7 ("For [Senator Fisher] then, as an agency, he was required to report . . . ." At oral arguments, Senator Fisher appeared to refine his argument to propose that the legislative office is the agency. *See* Min. Entry at 9:32 A.M. (Sept. 27, 2024) ("Senator Taitague's office is the agency. Each Senator and their office is the agency.").

4

the plain meaning prevails." *Sumitomo Constr., Co., Ltd. v. Govt. of Guam*, 2001 Guam 23 ¶ 17. However, "the plain meaning of statutory language need not be followed where the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results." *People v. Cruz*, 2021 Guam 10 ¶ 12 (quoting *Sumitomo*, 2001 Guam 23 ¶ 17).

### a. The Sunshine Act Applies to "Agencies"

Under the Sunshine Act, subject to certain exceptions not relevant to this case, "[e]very person[3] has the right to inspect and take a copy of any <u>public document</u> on Guam[.]" 5 GCA § 10103(a) (emphasis added). The Sunshine Act does not define "public documents," but it does define the term "public records." These two terms appear to be synonyms. *See In re A.B. Won Pat Int'l Airport Auth.*, 2019 Guam 6 ¶ 44 (noting these terms are "used interchangeably"). The definition of "public records" includes, in relevant part, "any writing containing information relating to the conduct of the public's business <u>prepared, owned, used, or retained by any state or local agency</u> in any format, including electronic format; and any out-of-court settlement records." 5 GCA § 10102(d) (emphasis added). Thus, all non-privileged documents regarding public business that are held by an "agency" are "public records."

The word "agency" recurs throughout the Sunshine Act. For example, in providing how a person can seek copies of "public records," the Sunshine Act provides that "each <u>agency</u>, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available[,]" 5 GCA § 10103(c) (emphasis added) and that "[e]ach <u>agency</u>,

---

[3] The Sunshine Act defines a "person" to include "<u>any natural person</u>, corporation, partnership, limited liability company, firm or association." 5 GCA § 10102(c) (emphasis added). Senator Fisher, in his *personal* capacity, is clearly a "natural person" and thus a "person" for purposes of the Sunshine Act. It may be true, as Senator Taitague argues, that Senator Fisher, in his *official* capacity, has no additional standing or further rights under the statute as does his *personal* capacity. *See* Sen. Taitague Further Briefing at 3 n.2 (Aug. 23, 2024). Nonetheless, Senator Fisher is still named as a plaintiff in his *personal* capacity as well. In that capacity, he has standing to prosecute this case.

upon a request for a copy of public records shall, within four (4) working days from receipt of the request, comply with the request[,]" 5 GCA § 10103(d) (emphasis added). From these statutes, it is clear that "agencies" are the entities who hold the duty to comply with Sunshine Act requests.

### b.    An "Agency" Is "Any Authority of the Government"

The word "agency," as used in the Sunshine Act, "means any authority of the government and includes a department, institution, board, bureau, commission, council, committee of Guam government, branch, autonomous instrumentality, public corporation funded by public taxes or funds, or other public entity of the government of Guam, whether or not it is within or subject to review by another agency." 5 GCA § 10102(a) (emphasis added). The Court must first interpret the phrase "any authority of government."

The plain meaning of the word "any" is "all or every." *Carrillo v. State ex rel. Wyoming Workers' Compensation*, 107 P.3d 786, 789 (Wyo. 2005); *cf. Port Auth. of Guam v. Civil Serv. Comm'n (Javelosa)*, 2018 Guam 9 ¶ 19 (absent a specific contrary definition, a statutory word should be "ascribed its common and ordinary meaning."). Moreover, where a statute uses the word "any," that language "[n]ecessarily . . . gives to the language employed a broad and comprehensive grasp." *Carillo*, 107 P.3d at 789. Thus, the phrase "any authority of the government" must mean *all* authorities of government. This interpretation is strengthened by the fact that while the statute provides a long list of entities that are *included* in the definition, it does not specify any entities that are *excepted* from the definition. Had the Legislature intended to exclude any particular "authority of government" from "agency" status, it could have said so. Since the Legislature did not do so, the phrase "any authority of government" must mean *all* "authorities of government." *Cf. Camacho v. Shimizu*, 2021 Guam 22 ¶ 30 (had the Legislature intended legislation to yield a specific result, "it would have clarified that intent" by saying so explicitly).

The Sunshine Act does not define the phrase "authority of government" directly, nor (to the Court's knowledge) does any other Guam statute. However, the interpretive canon known as *noscitur a sociis* provides that a word is "given more precise content by the neighboring words with which it is associated." *Fischer v. United States*, 603 U.S. 480, 487 (2024). Here, the Sunshine Act provides that an "authority" of government means, at minimum, something that *includes* "a department, institution, board, bureau," and so forth. 5 GCA § 10102(a). Black's Law Dictionary defines the word "include" as meaning "to contain as a part of a something,"[4] and Merriam-Webster's Dictionary defines the word "include" as "compris[ing] as a part of a whole or group."[5] Thus, the phrase "any authority of government" means that each of the categories listed thereafter are examples of an "authority of government," which in turn means that entities *within* those categories are "agencies" under the Sunshine Act.

c.     **Senator Taitague Is Not an "Agency"**

Before proceeding, the Court pauses to consider whether an individual senator qualifies as an "authority of government" under the statute. Senator Taitague argues that when read as a whole, the Sunshine Act clearly distinguishes between "agencies" and "individuals," such as "directors" or "public officers." Sen. Taitague Further Briefing at 4 (citing *Topasna v. Gov't of Guam*, 2021 Guam 23 ¶ 10). The Court agrees. As Senator Taitague notes, the penalties provision of the Sunshine Act—5 GCA § 10112(d)—provides that an award of court costs "shall be paid by the public agency of which the public official is a member or employee and shall not become a personal liability of the public official." Here, if Senator Taitague herself were deemed an "agency," she would also presumably be the "public official" in charge of the "agency" that is

---

[4] *Include, Black's Law Dictionary* (12th ed. 2024).
[5] *Include, Merriam-Webster,* https://www.merriam-webster.com/dictionary/include.

herself. Under that construction, 5 GCA § 10112(d) would provide that Senator Taitague herself must pay costs, because she is an agency, and also that the costs would not be her personal liability, because she is a public official. This would be a contradictory and absurd construction, and the Court agrees that this signals that the Sunshine Act intended a distinction between the agency itself and the public officials who work for such agencies. This conclusion is also consistent with how other courts have interpreted similar local and federal statutes governing the right of public access. *See, e.g., Competitive Enterprise Institute v. Podesta*, 643 F.Supp.3d 121, 126 (D.D.C. Nov. 28, 2022) (under federal Freedom of Information Act ("FOIA"), "[n]eedless to say, individuals are not agencies."); *City of Champaign v. Madigan*, 992 N.E.2d 629, 639 (Ill. Ct. App. 2013) (under Illinois' equivalent of FOIA, "an individual alderman is not a public body."). The Court agrees that an individual senator (or any other individual) is not an "agency" under the Sunshine Act.

However, this analysis does not fully resolve the case, because it does not foreclose the possibility that a senatorial *office* is an agency under the Sunshine Act. A finding that a senatorial *office* is an agency would not violate the boundary between the individual and the agency; it would instead preserve the distinction. It would not be absurd to interpret 5 GCA § 10112(d) to provide that court costs shall be paid by the senator's *office*, but not by a senator herself. Thus, while an analysis of the Sunshine Act's penalty statute shows that an individual senator is not an agency, it does not go further to prove that the senator's *office* is not an agency.

d.     **An "Other Public Entity of the Government" Is an "Agency"**

While 5 GCA § 10112(d) does not *preclude* the finding that a senatorial office is an "agency," the Court must still determine whether that conclusion would be viable under 5 GCA § 10102(a). Senator Taitague contends, and it is clearly true, that 5 GCA § 10102(a) does not specify that a senator or a senatorial office is an "agency." However, this does not resolve the matter either,

8

because the statute does not specify that *any specific* entity is an "agency." For example, the statute does not name the A.B. Won Pat International Airport Authority specifically, but the Sunshine Act clearly applies to that entity, presumably because it is an "autonomous instrumentality" under 5 GCA § 10102(a). *See In re A.B. Won Pat Int'l Airport Auth.*, 2019 Guam 6 ¶¶ 43-53. Nor does the statute name the Department of Revenue and Taxation specifically, but the Sunshine Act clearly applies to that entity as well, presumably because it fits within the category of "department" under 5 GCA § 10102(a). *See generally Ryan v. Birn*, 2024 Guam 11. Moreover, the statute does not name the Legislature itself as an "agency," although Senator Taitague concedes that the Legislature likely fits within the category of "branch" of the Guam government. Sen. Taitague Further Briefing at 4-5.

Instead, the statute provides only broad categories, presumably with the intent that an entity is an "agency" if it squarely fits into one such category. Neither party contends, and the Court does not find, that a senatorial office would fit into the category of a "department, institution, board, bureau, commission, council, committee of Guam government, branch, autonomous instrumentality, [or] public corporation funded by public taxes or funds . . . ." 5 GCA § 10102(d). That leaves Senator Fisher only two possibilities. The first, which is the core of his written briefing, is that the statutory list is meant to be non-exhaustive, meaning that a senator and/or her office need not fall under any of the categories listed to be an "agency." The second possibility, which Senator Fisher argued for at the hearing on September 27, 2024, is that a senatorial office is included within the final category listed in the statute: an "other public entity of the government of Guam." Min. Entry at 9:53:57 A.M. (Sept. 27, 2024).

Senator Fisher argues that because 5 GCA § 10102(a)'s definition of "agency" sets off its list of categories with the word "includes," this means that the list of categories is non-

exhaustive—in other words, that the listed categories are "merely among other unnamed agencies." Sen. Fisher Further Briefing at 3. It is generally true that when a statute uses a word like "includes," the purpose is for that word to function as "a term of enlargement rather than limitation." *See, e.g., Hassan v. Mercy Am. River Hosp.,* 74 P.3d 726, 730 (Cal. 2003) (quoting *Ornelas v. Randolph,* 847 P.2d 560, 563 (Cal. 1993)). Thus, the statutory word "includes" can "signal that the list that follows is meant to be illustrative rather than exhaustive." *Samatar v. Yousuf,* 560 U.S. 305, 317 (2010); *see also Include, Black's Law Dictionary* (12th Ed. 2024) ("The participle *including* typically indicates a partial list."). But on the other hand, the word "includes" is "not necessarily a term of enlargement in all instances." *People v. Aguirre,* 279 Cal.Rptr.3d 126, 135 (Ct. App. 2021). It may instead signal that the definition "encompasses only those provisions or exceptions specifically listed." *State v. Popenhagen,* 749 N.W.2d 611, 622 (Wisc. 2008). Thus, 5 GCA § 10102(a)'s use of "includes" could be reasonably interpreted in two ways: either that the definition "includes" the listed entities non-exhaustively, or that the definition "includes" *only* the listed entities. However, the Court needs not decide that issue here, because the Court instead finds that a senatorial office fits within the category of an "other public entity of the government of Guam."

e.        **The Meaning of "Other Public Entity of the Government" Is Unclear**

The Sunshine Act does not directly define the term "public entity," and the meaning of that term is not self-evident. In *Guam Radio Services v. GEDA,* a case interpreting a prior version of the Sunshine Act, the Guam Supreme Court stated in a footnote that Black's Law Dictionary defines a "public entity" as including "a nation, state or county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation, whether foreign or domestic." 2000 Guam 1 ¶ 6 n.1 (quoting Black's Law Dictionary 1229 (6th ed. 1990)).

While this definition may be appropriate in the context of other uses of the term, it could not have been what the Legislature intended for the term "other public entity of the government of Guam" to mean for purposes of the Sunshine Act. *Cf. Chargualaf v. Gov't of Guam Ret. Fund*, 2021 Guam 17 ¶ 21 ("Here, the statutory definition of "salary" is broader than that in Black's Law Dictionary and arguably common understanding.").

The Black's Law Dictionary definitions would not make sense in the context of the Sunshine Act. The terms that describe a traditional political subdivision—i.e. a "state," "county," or "city,"—do not describe a public entity *of the government of Guam*, which does not have these kinds of subdivisions. The terms "public authority" and "public agency" would only create circularities: they would result in a definition of "agency" as a "public agency," and a definition of "authority of the government" as a "public authority." And the term "public corporation" would be redundant because the Sunshine Act already explicitly includes "public corporations" as its own separate category. In short, the Legislature could not have intended the phrase "other public entity" to comport precisely with the Black's Law Dictionary definition of "public entity," or else "other public entity" would have no independent meaning or evident purpose. *See People v. Taisacan*, 2023 Guam 19 ¶ 50 (disavowing a statutory interpretation that rendered a provision of the statute redundant and/or superfluous).

Instead, the Legislature must have meant the phrase "other public entity" to mean something other than what it had already said (such as a "public corporation") or what it could not have reasonably meant (such as a "state" of the government of Guam). To determine the meaning of an "other public entity," the Court considers the "purposes and policies of the act in question." *See Villalon v. Hawaiian Rock Prods., Inc.*, 2001 Guam 5 ¶ 24. As noted above, the Sunshine Act expressly applies to *any* authority of the government. 5 GCA § 10102(a). It grants *every* person

the right to inspect *any* non-privileged public document possessed by a state or local agency. *See* 5 GCA §§ 10102(d), 10103(a), 10102(b). Moreover, the (uncodified) legislative findings[6] for the Sunshine Act provide that "public access to information is a fundamental right of citizens and a necessity for an informed electorate," and that the purpose of the Act is to "foster democracy by ensuring public access to agency records and information." Public Law ("P.L.") 25-06 at 1-2 (May 12, 1999). Given the expansive language employed throughout the Sunshine Act, as well as the rhetoric of the Act's legislative findings, it is clear that the "purpose and policy" of the Sunshine Act is to ensure a broad right of access to all public, non-privileged records. Accordingly, the Sunshine Act must be interpreted in a manner that vindicates that right.

### f.     A Senatorial Office Is an "Other Public Entity" under the Sunshine Act

The Court must determine the overarching legal principle at play in this case without over-relying on the unique posture in which it arose. Here, it is effectively undisputed[7] that while Senator Taitague did not directly disclose the text messages to Senator Fisher, she did disclose them to the Executive Director of the Legislature, who in turn disclosed the text messages to Senator Fisher. Thus, regardless of whether a senatorial office is an "agency," the primary purpose of the Sunshine Act—to ensure disclosure of public records—has already been fulfilled. But while that is relevant to other aspects of *this* case, such as its potential mootness (see *infra*), it cannot direct the Court's analysis of whether Senator Taitague's office is an "agency" under the Sunshine

---

[6] The legislative findings for the Sunshine Act were provided in Section 1 of Public Law 25-06 (May 12, 1999), which created the Act. It is unclear to the Court why these findings were not codified.

[7] Senator Fisher maintains that the Executive Director's disclosure of the text messages is simply irrelevant, as "any response by [the Executive Director] is not a response by [Senator Taitague]." Sen. Fisher Reply at 3 (July 26, 2024). However, he does not deny that he received the text messages in question, nor does he deny that Senator Taitague also disclosed these text messages to the Court as Exhibit "C" in her Response (July 24, 2024).

Act. It would run contrary to the purpose of the Sunshine Act if an "agency" could not only discharge its duties under the Act, but avoid an "agency" classification altogether, simply by referring the Sunshine Act requests it receives to another entity.[8] Likewise, it would run contrary to the purpose of the Sunshine Act if an "agency" could avoid the duty to disclose simply by asserting that a requester already has received the documents from another source. *See Delta Ltd. v. U.S. Customs and Border Protection Bureau*, 384 F.Supp.2d 138, 148 (D.D.C. July 26, 2005) (in context of federal FOIA statute, "[s]imply because plaintiff may already have certain documents in its possession . . . does not lessen the requirement that an agency follow the guidelines and regulations provided[.]").

Instead, the Court finds the logic of the *Guam Radio Services* case (2000 Guam 1) to be persuasive. Although *Guam Radio Services* interprets the Sunshine Act, it analyzed the 1987 Sunshine Act, which differs significantly in language—and thus in analytical approach—from the current Act. Given the differences between the two Acts, a direct application of *Guam Radio Services* proves difficult.[9] However, while there are significant differences between the two Acts, their core purposes are identical. *Compare Guam Radio Servs.*, 2000 Guam 1 ¶ 8 (noting that the

---

[8] The Court notes that under the federal FOIA statute, "[a]gencies commonly refer documents to another agency for a 'direct response' if the receiving agency concludes that another agency should bear the responsibility of determining whether requested material is exempt under FOIA." *Techserve Alliance v. Napolitano*, 803 F.Supp.2d 16, 21 n.9 (D.D.C. Aug. 17, 2011). However, this practice is permitted by 6 C.F.R. § 5.4(c), a federal regulation not applicable to the Sunshine Act and which has no local equivalent. Nothing in the Sunshine Act contemplates the referral of requests to another agency; instead, upon receipt of a Sunshine Act request, the agency director (or designee) shall "assign the request to be fulfilled or responded to by an employee of the agency." 5 GCA § 10105(b) (emphasis added).

[9] For example, the Sunshine Act of 1987 determined the public's right of review by reference to whether the documents sought were "public writings," which in turn depended on whether the holder of said documents was a "sovereign authority" and/or an "official body" of the government. As set forth above, the current Sunshine Act generally employs different terms, with seemingly different meanings. The analytical approach under the current Sunshine Act is therefore different than under the 1987 Act. Because the two Acts are so different, the Court finds *Guam Radio Services* persuasive but not controlling authority.

"main purpose" of the 1987 Act was that "[e]very person has the right to inspect and take a copy of any public writing on Guam,") *with Macris*, 2008 Guam 6 ¶ 25 (noting that "[t]he [current] Sunshine Act and FOIA are alike in purpose and subject matter") *and Southern Utah Wilderness Alliance, Inc. v. Hodel*, 680 F.Supp. 37, 38-39 (D.D.C. Feb. 23, 1988) (noting that "the broad, general purpose of FOIA is to enable any person to request disclosure[.]").

Another general similarity between the prior and current Sunshine Acts is the ambiguous reach of the statute. *See Guam Radio Servs.*, 2000 Guam 1 ¶ 10 ("Indeed, the [1987] Sunshine Act is, in effect, silent as to whom the Sunshine Act applies."). Faced with a somewhat similar task as the one before this Court today, *Guam Radio Services* reasoned:

> [T]he [1987] Sunshine Act's introductory provisions indicate that the Sunshine Act grants citizens the right to inspect "public writings." Although this grant of the right to inspect is quite clear, the possessor of these "public writings" and/or the entity to whom this right of inspection shall be applied is not apparent upon a plain reading of the relevant statutes. . . .
>
> In determining whether the Sunshine Act applies to GEDA, we recognize, a circularity in the statutory interplay. The absence of a clear provision setting forth a list of entities or a scope of applicability requires this Court to determine if the records sought are "public writings." In our view, if records or documents sought by a party are in fact "public writings," then by necessity, the Sunshine Act applies to that party exercising custody over such documents.

*Guam Radio Servs.*, 2000 Guam 1 ¶ 10-11 (emphasis added). In short, upon a similar dilemma as this Court faces, the *Guam Radio Services* court reasoned that the Sunshine Act applies "by necessity" to any custodian of the public documents sought. Similarly, the current Sunshine Act applies to requests for "public records," 5 GCA § 10103(a), which are "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency," 5 GCA § 10102(d) (emphasis added). As explained above, an "agency"

includes, among other things, an "other public entity of the government of Guam." 5 GCA §

10102(a). The meaning of "public entity" is undefined by the Sunshine Act, and it also does not

appear to comport with the dictionary definition of that phrase. Under these circumstances, and in

light of the Sunshine Act's broad policy favoring disclosure, the Court interprets the term "other

public entity" to be a catch-all phrase referring to any public entity, not including individuals, with

custody over disclosable public records. When a senatorial office has custody over such records,

it is an "agency" for purposes of the Sunshine Act.

g.   **The Legislature May Be an "Agency," but That Is Irrelevant Here**

Senator Taitague contends that the Legislature itself is an "agency" for purposes of the

Sunshine Act. It is clear that the definition of "agency" is inclusive of a "branch." 5 GCA §

10102(a). It is plausible that the word "branch" refers to one of the three branches of the Guam

government, i.e., the Legislative, Executive, and Judicial branches. *See* 48 USCA §§ 1422, 1423,

1424 (setting forth Guam's tripartite governmental structure). It may therefore be true that the

Legislature is an "agency" under the Sunshine Act because it is a "branch." But it does not follow

that a senatorial office is *not* an "agency" just because the Legislature *is* one. The Sunshine Act

provides that an "agency" includes "other public entity of the government of Guam, <u>whether or

not it is within or subject to review by another agency</u>." 5 GCA § 10102(a)(emphasis added). Thus,

even assuming that a senatorial office is "within" or "subject to review" by another "agency" (i.e.,

the Legislature), a senatorial office can still be an "agency" for purposes of the Sunshine Act.

h.   **Senator Taitague Is the "Director" of Her Senatorial Office**

Under 5 GCA § 10105(b), "[u]pon receipt of a request for records under this Chapter, <u>the

Director of an agency</u> or his designee shall immediately assign the [Sunshine Act] request to be

fulfilled or responded to by an employee of the agency." (emphasis added). As explained above,

it is the Court's position that Senator Taitague's office is an "agency," which means the duty to address the Sunshine Act belonged to the "director" of that "agency." The Sunshine Act defines a "director" as "the person directly responsible for overseeing the daily operations of an agency, or the person serving in an acting capacity as director at the time of any request for copies of public records." 5 GCA § 10102(b). Here, Senator Taitague is the "director" of her senatorial office insofar as she is directly responsible for overseeing its daily operations. A senator selects the employees for his or her office, *see* Standing Rules of the 37ᵗʰ Guam Legislature, Section 14.02(b), can direct the office's employees to work irregular hours, *id.* at Section 14.02(e), and has the power to suspend or discharge those employees, *see id.* at Section 13.03. Accordingly, the Court finds that a senator is "directly responsible for overseeing the daily operations" of his or her office.

Senator Taitague is therefore the "director" of her senatorial office, which means that under 5 GCA § 10105(b), it was her duty to assign Senator Fisher's Sunshine Act request to be "fulfilled or responded to by an employee of the agency." Although Senator Taitague may have "assigned" the request to the Executive Director of the Legislature, the Executive Director is not an "employee" of Senator Taitague's office. *See* Standing Rules of the 37ᵗʰ Guam Legislature, Section 13.01 (the Executive Director is elected by a majority vote of the senators and is "under the supervision of the Chairperson of the Committee on Rules"). For this reason, Senator Taitague could not have properly "assigned" Senator Fisher's request to the Executive Director. Instead, Senator Taitague was required to respond to the request herself, or else to assign the request to an employee *of her office*.

## 2. <u>Notwithstanding the Above Analysis, This Case Is Moot</u>

Having determined that Senator Taitague's office is an "agency," and that Senator Taitague herself (as its "director") holds the duty to respond to a Sunshine Act request seeking public records

in the custody of her office, the Court must now consider whether this lawsuit is moot. To be clear, although mootness is a "threshold jurisdictional issue," *People v. Blas*, 2016 Guam 19 ¶ 11, the Court could not have reached the question of mootness without first determining whether Senator Taitague's office was an "agency" because Senator Taitague's mootness argument was premised on the position that her office was not an "agency."

Senator Taitague argues that this case is moot because, essentially, (1) the duty of disclosure belonged to the Legislature, not to her office, and (2) the Executive Director of the Legislature has already disclosed all the text messages in question to Senator Fisher. Sen. Taitague Response at 3 (July 24, 2024). However, this position is untenable in light of the Court's rejection of its first premise—the Court has held that the duty of disclose did belong to Senator Taitague's office. On the other hand, Senator Fisher argues that the case is not moot because Senator Taitague's office has not directly disclosed the text messages to him. This is true, but as noted above, it is clear to the Court that Senator Fisher has already received the text messages he sought, albeit from Senator Taitague through the Executive Director. Because Senator Fisher already has the text messages, it unclear to the Court whether there would be any beneficial purpose in ordering Senator Taitague's office to disclose the same messages again.

A case is moot "when the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Blas*, 2016 Guam 19 ¶ 13 (citing *Town House Dep't Stores v. Ahn*, 2000 Guam 32 ¶ 9). The Sunshine Act does not explain whether a lawsuit becomes moot after the plaintiff receives the public documents sought, nor is there Guam Supreme Court case law on this issue. However, in the context of the federal Freedom of Information Act, courts typically hold that once the requesting party has received what was sought, the case becomes moot. *See, e.g., Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("however fitful or delayed the release of

information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform"); *Matter of Wade*, 969 F.2d 241, 248 (7th Cir. 1992); *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986). This is also true in the context of similar state statutes. *See, e.g., AIM Media Texas, LLC v. City of Odessa*, 663 S.W.3d 324, 332 (Tex. Ct. App. 2023); *Turner v. Joliet Police Dep't*, 123 N.E.3d 1147 (Ill. Ct. App. 2019). It is true that in these cases, the records were eventually produced by the same agency who initially resisted disclosure, not by a third party. However, the Court finds the general logic of those decisions persuasive here. Under the Sunshine Act, a person has the right to seek copies of public records. The statutory role of the courts of Guam is to ensure that public records are not unlawfully withheld from those who seek them. *See* 5 GCA § 10111(b) (a lawsuit may be filed to "enforce [a] person's right to inspect or to receive a copy of any public record or class of public records."). Here, however, Senator Fisher has already received access to the public records that this lawsuit seeks. Under these circumstances, there is no further right of access for the Court to enforce.

Senator Fisher also argues that even if this case is otherwise moot, it falls within the mootness exception known as "capable of repetition but evading review." However, that exception applies only when "(1) the challenged action is too short in duration to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will again be subject to the same action." *Guam Election Comm'n v. Responsible Choices for All Adults Coalition*, 2007 Guam 20 ¶ 31. Even assuming that the first prong of the test has been met, there is no evidence before the Court suggesting that Senator Taitague's office will again fail to disclose public records to Senator Fisher. The Court understands the non-disclosure at issue here to have been based on a good-faith interpretation of a difficult statute, concerning a previously unresolved question of

Guam law. Now that the question has been resolved, the Court assumes that if this issue were to arise again, Senator Taitague's office would respond accordingly.

### 3. The Court Will Schedule a Hearing to Determine Penalties

Senator Fisher requests the assessment of statutory penalties: a $1,000.00 fine assessed to Senator Taitague personally under 5 GCA § 10112(a); a finding that Senator Taitague's actions were "arbitrary and capricious" and that she has therefore committed a misdemeanor criminal offense under 5 GCA § 10112(c); and reimbursement of Senator Fisher's attorneys' fees and court costs, under 5 GCA § 10112(d). Petition at 3-4 (July 9, 2024).

The Court notes that although Senator Fisher made his Sunshine Act request on June 28, 2024, the text messages were not disclosed to him until July 11, 2024. This delay violated the Sunshine Act's requirement that public documents be timely disclosed within four working days after receipt of a request. 5 GCA § 10103(d). The penalty provisions may therefore apply here, notwithstanding the mootness of the case. In federal courts, a FOIA plaintiff may pursue attorneys' fees and court costs even after the case becomes moot following a belated disclosure. *See, e.g., Cornucopia Institute v. Dep't of Agriculture,* 560 F.3d 673, 676-77 (7th Cir. 2009); *Carter,* 780 F.2d at 1481. Likewise, in states with penalty provisions similar to those provided in 5 GCA §§ 10112(a) and (c), civil penalties survive a mootness finding. *See, e.g., Staake v. Dep't of Corrections,* 209 N.E.3d 1019, 1024-25 (Ill. Ct. App. 2022); *Brumfield v. Village of Tangipahoa,* 340 So.3d 221, 231-32 (La. Ct. App. 2021). The Court thus finds that the penalty provisions survive the mootness finding.

The Court will defer a decision on penalties, if any, until after the parties have an opportunity to make further arguments regarding the appropriateness of granting such penalties.

The Court notes with respect to the request for a statutory fine, the Court's decision will be guided by the Guam Supreme Court's recent decision in *Ryan v. Birn*, which explains:

> When acting in good faith, a public official's reasonable interpretation of a statute, even if later found incorrect, may justify withholding documents. The imposition of a fine under 5 GCA § 10112(a) must be based on a factual finding—supported by substantial evidence—that the public official's decision to refuse disclosure was not justified. A conclusion that documents must be disclosed under section 10111(e) does not establish, as a matter of law, a public official's liability for a fine under section 10112(a).

2024 Guam 11 ¶ 25. Because a fine may not be imposed absent a factual finding that disclosure was "not justified," the Court will schedule a status hearing to permit argument and factual development—particularly with regard to whether Senator Taitague's interpretation of her Sunshine Act duties was reasonable and in good faith.

Concerning the requested "arbitrary and capricious" finding, the Court will entertain argument on this issue at the upcoming hearing. However, no matter how the Court ultimately decides that issue, the Court will not grant the portion of Senator Fisher's request that asks the Court to make a declaration of criminal liability. Although 5 GCA § 10112(c) provides that "[a]ny officer or employee who acts arbitrarily or capriciously in withholding a public record from a requesting person shall be guilty of a misdemeanor," the Court does not read this statute as empowering a court to make a declaration of criminal liability. Instead, that provision merely states that an "arbitrary and capricious" finding could be the genesis of a criminal prosecution. It is not, however, a *substitute* for traditional criminal prosecution, a matter committed to the Attorney General of Guam, *see* 5 GCA § 30104—not to a civil plaintiff, or to the Court itself.

With respect to attorneys' fees and court costs, the Court will hear argument on the matter.

## CONCLUSION

Under the Sunshine Act, a senator's office is an "agency" when it possesses public records. This is because a senator's office is an "other public entity of the government of Guam, whether or not it is within or subject to review by another agency." 5 GCA § 10102(a).

Senator Taitague's office was required to respond to Senator Fisher's Sunshine Act request. However, because Senator Fisher has already received the documents he sought, this case is **MOOT,** and the request for a peremptory writ of mandate is **DENIED.** Notwithstanding mootness, as noted above, Senator Fisher may still pursue the penalties provided by 5 GCA § 10112.

A status hearing to address the issue of penalties shall be held on **February 4, 2025 at 9:30 a.m.**

SO ORDERED: JAN 0 6 2025 .

HONORABLE DANA A. GUTIERREZ
Judge, Superior Court of Guam

You may appear in person at the Courtroom of Judge Dana A. Gutierrez, 120 W. O'Brien Drive, Hagåtña, Guam or you may participate via Zoom by logging onto https://guamcourts-org.zoom.us and enter the **Meeting ID: 839 7874 0380** and **Passcode: 189701.** For technical assistance, please call (671) 475-3207 five (5) minutes prior the designated hearing time.

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Razzano Walsh & Torres
R. Taimanao-Ayuyu

Date: 1/6/25 Time: 10 AM

Deputy Clerk, Superior Court of Guam

21